## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:06CR196 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND |
| | ) | |
| ANTHONY R. MURPH, | ) | RECOMMENDATION |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the motion to suppress filed by the defendant Anthony R. Murph (Murph) (Filing No. 15).[1]  Murph is charged in the Indictment with two counts of the possession with intent to distribute "crack" cocaine on May 5, 2005, in violation of 21 U.S.C. § 841(a)(1).  **See** Filing No. 1.  Murph seeks to suppress evidence derived from a traffic stop by the Omaha Police Department (OPD) of the vehicle occupied by Murph, the subsequent search of the vehicle and Murph's person, and the statements made by the Murph to officers on May 5, 2005, in Omaha, Nebraska.

An evidentiary hearing was held on Murph's motion on June 12, 2008.  Murph was present for the hearing along with his appointed counsel, Assistant Federal Public Defender Julie B. Hansen.  The United States was represented by Assistant U.S. Attorney Robert C. Sigler.  During the hearing, the court heard the testimony of OPD Officers Chris Gordon (Officer Gordon) and Adam Turnbull (Officer Turnbull).  A transcript of the hearing (TR.) was filed on June 16, 2008 (Filing No. 30).  Following the hearing, the government filed a post-hearing brief on June 20, 2008 (Filing No. 31).  Murph filed a post-hearing brief on June 25, 2008 (Filing No. 32).  The parties also stipulated the court could take judicial notice of Nebraska Revised Statutes §§ 28-1201 and 28-1202.

---

[1]As a convenience, this document contains certain cross-document hyperlinks to documents previously filed in this case.  This document also contains links to the Nebraska local rules and legal citation from the federal reporters.  The hyperlinked documents appear in blue underlined text.  Except with regard to the local rules, access to the hyperlinked material is subject to fees pursuant to user agreements.  The hyperlinks may be accessed without PACER fees by use of the public computer terminal in the Clerk's office.

**FINDINGS OF FACT**

Around 4:30 a.m. on May 5, 2005, Officer Gordon was in uniform driving a marked cruiser and on routine patrol (TR. 4). Officer Gordon received a radio call from dispatch regarding a suspicious vehicle with several occupants at 3846 North 65th Avenue in Omaha (TR. 4). The call concerned a dark colored Infiniti parked facing south in front of the address (TR. 5). Officer Turnbull, in uniform and in a separate marked cruiser, received the same call and responded to the area (TR. 5; 23).

Both officers arrived simultaneously at 3846 North 65th Avenue (TR. 5). The area is a residential neighborhood with 3846 North 65th Avenue being a single family dwelling (TR. 5). Officer Turnbull began shining a spotlight at vehicles parked in the area looking for any occupants (TR. 24). As Officer Turnbull spotlighted the Infiniti, the three occupants ducked down in the car (TR. 24). Officer Turnbull stopped his cruiser in front of the Infiniti (TR. 6). Officer Gordon drove past the car, parked his cruiser, and approached the rear passenger side of the Infiniti on foot (TR. 6). Officer Turnbull approached on the driver's side of the Infiniti and made contact with the occupants (TR. 6).

The Infiniti was occupied by three males, one in the driver's seat, one in the front passenger seat, and one in the rear seat behind the driver (TR. 6). As Officer Turnbull introduced himself and the reason for the contact, Officer Gordon shined his flashlight into the cabin of the Infiniti (TR. 7). Officer Gordon observed a cell phone by the rear passenger's knee and a shiny chrome object underneath the right hip between the rear passenger's buttocks and the seat (TR. 7). Initially, Officer Gordon believed the object to be brass knuckles, so he opened the rear door and asked the rear passenger about the object (TR. 8). As the passenger drew his hand to the object, Officer Gordon realized the object was a gun and declared "gun" loud enough for Officer Turnbull to know there was gun in the vehicle (TR. 8). Officer Gordon ordered all of the occupants to put their hands straight forward in front of them so the officers could see their hands (TR. 8). As Officer Gordon reached into the vehicle to secure the weapon, the rear passenger stated "It ain't mine" (TR. 9). Officer Gordon retrieved a Loricin .25 caliber handgun, a small silver chrome gun with a pearl handle on it (TR. 9). Officer Turnbull then removed the rear passenger and handcuffed him (TR. 11).

2

Officer Gordon maintained contact with the front seat occupants while Officer Turnbull removed the rear seat passenger who was identified as the defendant Murph (TR. 11). Murph initially identified himself as Tyrone Marshall and gave a date of birth (TR. 11; 27). A record check revealed Tyrone Marshall had no record (TR. 11). Officer Turnbull arrested Murph and removed 88 rocks of "crack" cocaine from Murph's pocket during the search incident to Murph's arrest (TR. 13; 27). Murph spontaneously stated the rock-like substance was candle wax and a guy in Chicago told Murph to sell it to make some money (TR. 27-28).

The driver was cited for driving during suspension and possession of less than an ounce of marihuana and released (TR. 12 -13). The front passenger was not charged with anything and released (TR. 13). Murph was arrested and taken to Central Police Station where he was processed (TR. 14). As Murph was in the processing room, Murph stated the items found were given to him by a friend in Chicago, was told it was a fake, but that Murph could sell if for some money (TR. 14). Officer Gordon stated Murph's comments were unsolicited (TR. 14-15). Later Murph was advised of his *Miranda* rights and he declined to make a statement (TR. 13).

## LEGAL ANALYSIS

The defendant, a passenger in the vehicle, has standing to challenge an illegal search and/or seizure of the vehicle under the circumstances here where the search at issue – opening the car door – directly related to the defendant's person. See *Brendline v. California*, 127 S. Ct. 2400 (2007) (vehicle passenger has standing to contest seizure resulting from traffic stop); *United States v. Grajeda*, 497 F.3d 879 (8th Cir. 2007) (opening car door constitutes a search). Here, the defendant challenges the constitutionality of the officers' conduct with regard to all evidence discovered during his May 5, 2005 contact with police officers. Specifically, the defendant argues the evidence should be suppressed because the officers had (1) no legal justification for a valid traffic stop of the vehicle; (2) no justification existed for the defendant's continued detention; (3) no reasonable articulable suspicion supported the search of the defendant; and (5) no probable cause existed to search the vehicle. Additionally, the defendant contends any

3

statements he made to law enforcement should be suppressed because he was not given a *Miranda* warning and such statements were involuntary or the product of the illegal stop and detention.

### A.   Stop and Detention

The defendant argues the officers did not have justification for the "traffic stop," therefore the contact was an unconstitutional stop and detention.  The "position that a person is 'seized' for Fourth Amendment purposes whenever an officer interrupts what that person was otherwise doing is absurd." *United States v. Tarantola*, 332 F.3d 498, 499 (8th Cir. 2003).  Merely attempting to attract a person's attention to further investigate suspected criminal behavior "does not implicate any Fourth Amendment interest, does not amount to a seizure, and thus falls outside the ambit of the Fourth Amendment." *Id.* at 499-500 (knocking on glass door of laundromat is not a seizure).

Here the officers received a dispatch call that there were suspicious persons in a vehicle at a particular address.  The officers located the vehicle at the address and approached it.  The officers first observed the occupants duck down when approached. After the approach, Officer Gordon observed what he believed was a pair of brass knuckles partially concealed by the rear passenger.  Based on the circumstances, the officers did not unconstitutionally seize the defendant when they approached and made contact with him.  The officers initial contact with the occupants of the vehicle did not constitute a traffic stop or a seizure.  **See** *United States v. Barry*, 394 F.3d 1070, 1074-75 (8th Cir. 2005).

Similarly, the officers' cursory look into the vehicle was not a search.  **See** *id.* at 1078; *United States v. Hatten*, 68 F.3d 257, 260 (8th Cir. 1995) (plain view inside a vehicle).  "Neither probable cause nor reasonable suspicion is necessary for an officer to look through a window (or open door) of a vehicle so long as he or she has a right to be in close proximity to the vehicle." *United States v. Bynum*, 508 F.3d 1134, 1137 (8th Cir. 2007); **see** *United States v. Payne*, No. 07-3142, 2008 WL 2853205, at *3 (8th Cir. July 25, 2008).  However, the initial contact immediately became an investigative detention after Officer Gordon observed the weapon and opened the vehicle's door.  An investigative detention must be supported by a reasonable articulable suspicion of criminal activity.

4

> [The Eighth Circuit] has summarized the standards used to consider whether reasonable suspicion exists as follows:
>
> The standard of articulable justification required by the fourth amendment for an investigative, *Terry*-type seizure is whether the police officers were aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warranted suspicion that a crime was being committed. In assessing whether the requisite degree of suspicion exists, we must determine whether the facts collectively establish reasonable suspicion, not whether each particular fact establishes reasonable suspicion. The totality of the circumstances -- the whole picture -- must be taken into account. We may consider any added meaning certain conduct might suggest to experienced officers trained in the arts of observation and crime detection and acquainted with operating modes of criminals. It is not necessary that the behavior on which reasonable suspicion is grounded be susceptible only to an interpretation of guilt, however, the officers must be acting on facts directly relating to the suspect or the suspect's conduct and not just on a "hunch" or on circumstances which describe a very broad category of predominantly innocent [people].

*United States v. Beck*, 140 F.3d 1129, 1136 (8th Cir. 1998) (internal citations and quotations omitted); **see also** *Illinois v. Wardlow*, 528 U.S. 119, 124-25 (2000). Additionally, courts have held evasive and erratic behavior can contribute to a finding of reasonable suspicion. *United States v. Montero-Camargo*, 208 F.3d 1122, 1136-37 (9th Cir. 2000) (suspect took evasive and erratic path in an apparent attempt to avoid police, which was relevant to reasonable suspicion analysis). The Supreme Court has held "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Wardlow*, 528 U.S. at 124. The Court noted that even where all of the suspect's conduct is lawful, if the conduct is ambiguous and susceptible to an innocent explanation as well as creating a reasonable suspicion of criminal activity, police officers may detain the individual to resolve the ambiguity. *Id.* at 125-26.

Here, the defendant was located in the vehicle previously described in the dispatch call, the occupants ducked down at the sight of the officers, and the defendant had partially concealed a shiny chrome item which appeared to be a weapon. Under Nebraska law, "[e]xcept as otherwise provided in this section, any person who carries a weapon . . .

5

concealed on or about his or her person such as . . . brass or iron knuckles, or any other deadly weapon commits the offense of carrying a concealed weapon." Neb. Rev. Stat. § 28-1202. Even if Officer Gordon was mistaken about whether the defendant concealed brass knuckles, the officer made a reasonable assessment of the facts known to him.

A detention based on an officer's incorrect but reasonable assessment of facts does not violate the Fourth Amendment. **See** *Saucier v. Katz*, 533 U.S. 194, 205 (2001); *United States v. Garcia-Acuna*, 175 F.3d 1143, 1147 (9th Cir. 1999) (mismatched license plate). "The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). An officer may make a judgmental error, i.e., a "good faith mistake," concerning the existence of facts sufficient to constitute the requisite probable cause or reasonable suspicion. **See** *United States v. Leon*, 468 U.S. 897 (1984). In *Illinois v. Rodriguez*, 497 U.S. 177, 185 (1990), the Supreme Court noted that "what is generally demanded of the many factual determinations that must regularly be made by agents of the government . . . is not that they always be correct, but that they always be reasonable." An officer's mistake of fact may provide the objective basis for reasonable suspicion or probable cause under the Fourth Amendment because of the intensely fact-sensitive nature of reasonable suspicion and probable cause determinations. **See** *Ornelas*, 517 U.S. at 695-96.

Based on the circumstances of this case, the Court finds the officers had a reasonable articulable suspicion, not only to approach the defendant, but to detain the defendant while the officers continued their investigation. Officer Gordon had a reasonable articulable suspicion that the defendant was engaged in criminal activity when Officer Gordon acted on the facts known to him. Officer Gordon believed he saw a partially concealed weapon, the fact that Officer Gordon was mistaken about the nature of the weapon is immaterial to the analysis. The observation also provided the officers with an urgency to remove the defendant from the vehicle and probable cause for the search. At that time the warrantless search was justified as a *Terry* search because Officer Gordon

6

reasonably believed the defendant had a weapon. *United States v. Pratt*, 355 F.3d 1119, 1121-22 (8th Cir. 2004). Alternatively, the search was justified as incident to the defendant's arrest. *Id.* at 1121-24 (**citing** *United States v. Robinson*, 414 U.S. 218, 234, 236 (1973)).

## B.    Statements

There is no dispute the defendant made statements prior to being given a *Miranda* warning. The defendant made a statement about the handgun as Officer Gordon reached into the vehicle to secure it. During the search incident to arrest, the defendant also made a statement about the contents of his pocket at the time the officers found contraband. The defendant made similar comments about the contraband from his pockets while he was in the police processing room. The court must examine whether the statements were made pursuant to a custodial interrogation.

The Self-Incrimination Clause provides: "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "[T]he core protection afforded by the Self-Incrimination Clause is a prohibition on compelling a criminal defendant to testify against himself at trial." *United States v. Patane*, 542 U.S. 630, 637 (2004).

> [I]n *Miranda*, the Court concluded that the possibility of coercion inherent in custodial interrogations unacceptably raises the risk that a suspect's privilege against self-incrimination might be violated. To protect against this danger, the *Miranda* rule creates a presumption of coercion, in the absence of specific warnings, that is generally irrebuttable for purposes of the prosecution's case in chief.

*Patane*, 542 U.S. at 639 (**citing** *United States v. Dickerson*, 530 U.S. 428, 434-35 (2000); *Miranda v. Arizona*, 384 U.S. 436, 467 (1966)).

"The requirements of *Miranda* arise only when a defendant is both in custody and being interrogated." *United States v. Londondio*, 420 F.3d 777, 783 (8th Cir. 2005).

> Not every confession obtained absent the *Miranda* warnings is inadmissible, however, because "police officers are not required to administer *Miranda* warnings to everyone whom they question. *Miranda* warnings are required only where

7

there has been such a restriction on a person's freedom as to render him 'in custody.' It was that sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited."

*United States v. LeBrun*, 363 F.3d 715, 720 (8th Cir. 2004) (*quoting Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)). The "ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam) (internal marks omitted). The court must evaluate the objective circumstances surrounding the interrogation, and whether, under those circumstances, "a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995); *Stansbury v. California*, 511 U.S. 318, 322- 23 (1994) (based "on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned."). The court finds the defendant was in custody at the time of his statements because under the circumstances, no reasonable person would feel free to leave. The defendant was either detained or in the process of being detained or formally arrested when he made the statements.

Next, the court must determine whether the defendant was subject to interrogation at the time of his statements. "Interrogation in the *Miranda* context refers to express questioning and to words or conduct that officers should know is 'reasonably likely to elicit an incriminating response from the suspect.'" *United States v. Briones*, 390 F.3d 610, 612 (8th Cir. 2004) (*quoting Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)).

The defendant's statements were made in response to officers locating contraband under the defendant or in his pocket. Under these circumstances, the officers could not reasonably expect their conduct would be reasonably likely to elicit an incriminating response from the defendant. Therefore, the defendant was not entitled to a *Miranda* warning prior to the communication. **See** *Pennsylvania v. Muniz*, 496 U.S. 582, 603-04 (1990) (holding communication or instructions necessarily "attendant to" police procedure, such as sobriety tests, not likely to be perceived as calling for any incriminating response). As in *Briones*, the defendant's statements were not made in response to any questions posed by officers. Further, the court will not find statements are the product of

8

interrogation or its functional equivalent when the discovery of contraband, rather than police coercion, induces the incriminating statements. **See *United States v. Hawkins*, 102 F.3d 973, 975-76 (8th Cir. 1996)**.   Accordingly, the defendant's motion to suppress spontaneous statements he made to officers on May 5, 2005, should be denied.  Upon consideration,

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP that:**

Anthony R. Murph's motion to suppress (Filing No. 15) be denied.

## ADMONITION

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) business days after being served with a copy of this Report and Recommendation.  Failure to timely object may constitute a waiver of any objection.  The brief in support of any objection shall be filed at the time of filing such objection.  Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 31st day of July, 2008.

BY THE COURT:

 s/Thomas D. Thalken
United States Magistrate Judge